LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VALENTINA VELEVA, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>-against-<br><br>DON PABLO, INC., PABLO CASTRO, and XIOMARA CASTRO,<br><br>Defendants. | Case No.: 20-cv-1363<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff VALENTINA VELEVA ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, as and for her Complaint against Defendants DON PABLO, INC. ("DPI"), PABLO CASTRO ("Pablo"), and XIOMARA CASTRO ("Xiomara") (Pablo and Xiomara collectively referred to herein as "Individual Defendants"; DPI and Individual Defendants collectively referred to herein as "Defendants"), states on information and belief as follows:

**INTRODUCTION**

1.  Plaintiff brings this action on behalf of herself and all others similarly situated to recover unpaid wages, unlawful deductions, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §

201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6, 7, and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2. Plaintiff and others similarly situated worked at Defendants' restaurant as food servers, bartenders, busboys, and other tipped staff.  Plaintiff and others similarly situated were not compensated properly for all of the hours they worked, and Defendants made improper deductions from their wages, in violation of the FLSA and NYLL.

## PARTIES, JURISDICTION, AND VENUE

3. At all times relevant herein, Plaintiff was and is a resident of the State of New York, Queens County.  Plaintiff's consent to sue is submitted herewith as Exhibit 1.

4. At all times relevant herein, Defendant DPI was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 1725 Second Avenue, New York, New York.

5. DPI owns and operates restaurants under the Libertador trade name at two locations: 1725 Second Avenue in Manhattan, and 404 Henry Street in Brooklyn.  These locations are operated as a single enterprise.  Both locations are engaged in related activities, share common ownership and/or management, offer substantially the same menus, and have a common business purpose.  DPI's employees move interchangeably from location to location as needed, and use equipment bearing the same trade name and logo.  DPI provides the same terms of employment to employees at all locations.

6. DPI engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that DPI

transacts with customers and vendors located outside of New York and DPI's employees handle goods and materials produced outside of New York (including liquor and foodstuffs, cooking utensils and equipment, cleaning supplies, and other items) that have moved in interstate commerce, and DPI is thus an employers subject to the jurisdiction of the FLSA.

7. At all times relevant herein, the Individual Defendants were and are citizens and residents of the State of New York, Queens County.

8. Pablo is identified as the chief executive officer of DPI in its filings with the New York Department of State. Xiomara is also an owner, shareholder, officer, director, manager, and/or supervisor of DPI.

9. In their capacities as owners, shareholders, officers, directors, and/or managers of DPI, the Individual Defendants have at all times relevant herein exercised operational control over DPI and the terms and conditions of the employment of Plaintiff and all others similarly situated. Specifically, with respect to Plaintiff and all others similarly situated, both Pablo and Xiomara have the power and authority to (i) hire and fire employees, (ii) set their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment. At all times relevant herein, the Individual Defendants exercised functional control over the business and financial operations of DPI, and had authority over all employee-related decisions, including specifically but without limitation payroll, personnel, and wage and hour policies concerning Plaintiff and all others similarly situated.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to

Plaintiff's federal claims and form part of the same case or controversy.

11. This Court has personal jurisdiction over DPI in that it is incorporated in the state of New York and has its principal place of business therein.

12. This Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York.

13. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred herein.

## JURY DEMAND

14. Plaintiff demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

*Wage And Hour Allegations*

15. Defendants own and operate two restaurants in the New York City area under the trade name Libertador.

16. From on or around September 2, 2019 until her termination on or around October 2, 2019, Plaintiff worked for Defendants as a food server at the Libertador restaurant located at 1725 Second Avenue in Manhattan ("Restaurant"). Throughout her employment Plaintiff was paid at the rate of $10 per hour, the tip-credit minimum wage under the NYLL.

17. For the first three weeks of her employment with Defendants, Plaintiff worked at the Restaurant Tuesday through Sunday, from 6 P.M. until her work was finished (typically sometime between 12 and 1 A.M.), for a total of 6-7 hours per day and 36-42 hours per week. From on or around September 23, 2019 until the end of her employment, Plaintiff worked Tuesdays and Wednesdays only, from 6 P.M. until her work was finished (typically after 12 A.M.), for a total of 6 or more hours per day and 12 or more hours per week.

18. However, not all of Plaintiff's worked time was recorded by Defendants. At the beginning of their shifts, Plaintiff and others similarly situated would be "clocked in" by one of the Individual Defendants. When they finished their server duties, Plaintiff and others similarly situated would be "clocked out" by one of the Individual Defendants. At no point were Plaintiff or others similarly situated allowed to clock in or clock out for themselves.

19. After clocking out, Plaintiff and others similarly situated were required to do additional (non-tipped) work, such as cleaning the Restaurant and preparing service reports. Plaintiff routinely performed approximately 1.5 to 2 hours of such work per shift. However, Plaintiff and others similarly situated were still paid at the tip-credit minimum wage no matter how much time they spent performing non-tipped work.

20. Moreover, Defendants did not pay Plaintiff and others similarly situated for any work performed after they had been clocked out, either at the regular NYLL-mandated minimum wage of $15 or at the tip-credit minimum wage of $10.

21. Thus for the first three weeks of her employment with Defendants, Plaintiff regularly worked 7.5 to 10 hours per week for which she was not paid, including hours in excess of 40 for the week.

22. The unpaid hours Plaintiff and others similarly situated regularly worked for Defendants additionally served to reduce their average hourly wage below the federal minimum wage of $7.25 per hour.

23. Defendants also initially refused to pay Plaintiff for the time she spent "training" at the beginning of her employment. After Plaintiff complained to Xiomara, Defendants paid her for some (but not all) of the hours she had spent training. This is pursuant to Defendants' policy to not pay employees for the the time they spend "training" at the beginning of their

employment.

24. The Individual Defendants also improperly took a portion of the tips that rightfully should have gone to Plaintiff and others similarly situated.  Pursuant to Defendants' policy, all of the tips collected throughout the shift were pooled and divided among employees.  However, once or twice a week, Xiomara worked a shift as a bartender and server, and the tips she collected from the bar area were never included in the tip pool.

25. Defendants also took improper deductions from the wages of Plaintiff and others similarly situated.  Specifically, Plaintiff and others similarly situated were made to pay for any items returned by customers or for tables that walk out.  Per the Restaurant's online menu[1], individual entrees are priced in the range of $30-40, with the "Mixed Grill for 2 Person" going for $72.95.  During her employment with Defendants, Plaintiff was made to pay for returned dishes or even entire tables an average of twice per week.

26. As a result of Defendants' policies, Plaintiff and others similarly situated were not paid for all of the time they worked (including overtime hours), and are not paid all of the wages and compensation they were due, including federal- and state-mandated minimum wages.

27. Defendants also failed to properly record the unpaid time Plaintiff and others similarly situated worked, and thereby failed to make and keep accurate payroll records and provided Plaintiff and others similarly situated with fraudulent and inaccurate wage statements and wage notices in violation of the FLSA and NYLL.

28. On or around September 23, 2019, Plaintiff complained to Xiomara about her unpaid hours and the improper deductions from her wages.  In retaliation, Xiomara cut her shifts from 6 per week to 2.  Approximately a week later, Plaintiff was terminated.  Xiomara paid

---

[1] http://libertadornyc.com/Manhattan (last accessed February 6, 2020).

Plaintiff

29.     Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for all of the time they worked (including overtime hours), to pay them at a rate equal to or above the applicable federal and state minimum wage, to not withhold gratuities or otherwise make improper deductions from employees' pay, and to make and preserve proper payroll records.

30.     However, Defendants knowingly failed to pay Plaintiff and others similarly situated all of the regular and overtime wages to which they were entitled, and to make and preserve proper payroll records.

31.     As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendants.

32.     Furthermore, these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

*FLSA Collective Action Allegations*

33.     Plaintiff brings this action as a collective action pursuant to Section 216(b) of the FLSA on behalf of herself and all other waitstaff, bussers, bartenders, food runners, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("FLSA Collective Plaintiffs").

34.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them all of the minimum and overtime wages they were due for all of the work they performed. The FLSA claims of Plaintiff as stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

35. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 216(b) of the FLSA. The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

*Class Action Allegations*

36. Plaintiff brings claims for relief under the NYLL pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other waitstaff, bussers, bartenders, food runners, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("Class Period").

37. All said persons, including Plaintiff, are referred to herein as the "Class." The members of the Class are readily ascertainable. The number and identity of the members of the Class are determinable from Defendants' records. The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

38. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number would be based are presently within the sole control of Defendants, there is no doubt that there

are more than forty (40) members of the Class.

39.     Plaintiff's NYLL claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants (i) failing to pay proper regulary, minimum, and overtime wages for off-the-clock work; (ii) improperly retaining gratuities; (iii) improperly deducting returned and unpaid items from employees' wages; (iv) improperly taking a tip credit against employees' wages; and (iv) failing to provide proper wage notices and wage statements that were in compliance with the requirements under the NYLL.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiff sustained similar losses, injuries, and damages as other Class members, wth such injuries and damages arising from the same unlawful policies, practices, and procedures.

40.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

41.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions

engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

42. When wage and hour violations arise, current and former employees are often afraid to assert their rights. Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

43. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed Plaintiff and other Class members within the meaning of the NYLL;

b. What are and were Defendants' policies and procedures regarding the types of work and labor for which Defendants did not pay the Class members properly;

c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

d. Whether Defendants properly notified Plaintiff and other Class members of their hourly rate;

e. Whether Defendants provided proper wage statements and wage and hour notices to Plaintiff and other Class members per requirements of the NYLL;

f. Whether Defendants made improper deductions from the wages of Plaintiff and other Class members;

g. Whether Defendants improperly retained gratuities that rightfully should have gone to Plaintiff and other Class members; and

h. Whether Defendant properly compensated Plaintiff and other Class members for all hours worked under the NYLL.

### FIRST CAUSE OF ACTION
### (FLSA Collective Action)

44. Plaintiff repeats each and every previous allegation as if fully set forth herein.

45. At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of DPI within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

46. At all relevant times DPI was an employer within the meaning of the FLSA.

47. At all relevant times DPI and the Individual Defendants were joint employers of Plaintiff and the other FLSA Collective Plaintiffs.

48. As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly

worked hours for Defendants for which they were not paid, including overtime hours, in violation of the FLSA.

49. As a result of these unpaid hours, Plaintiff and the other FLSA Collective Plaintiffs regularly worked at an average rate of pay below $7.25 per hour, in violation of the FLSA.

50. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to pay Plaintiff and the other FLSA Collective Plaintiffs at or above the federally-mandated minimum wage and to pay them for all of the hours they worked (including overtime hours), when Defendants knew or should have known such was due.

51. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid minimum and overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

52. Plaintiff repeats each and every previous allegation as if fully set forth herein.

53. At all relevant times Plaintiff and the other Class members were employees of DPI within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

54. At all relevant times DPI was an employer within the meaning of the NYLL.

55. At all relevant times DPI and the Individual Defendants were joint employers of Plaintiff and the other Class members.

56. Section 196-d of the NYLL prohibits employers from directly or indirectly

demanding, accepting, or retaining any part of an employee's gratuity.

57. Section 193 of the NYLL prohibits employers from making any deduction from the wages of an employee, except deductions "expressly authorized in writing by the employee and are for the benefit of the employee."

58. 12 N.Y.C.R.R. § 146-2.9 (promulgated under the NYLL) provides that a food service worker who works at a non-tipped occupation for the lesser of (1) two hours or (2) 20 percent of her shift must be paid at the regular minimum wage without a tip-credit deduction.

59. 12 N.Y.C.R.R. § 195-4.5(d) (promulgated under the NYLL) prohibits employers from deducting from employee's wages "repayment of employer losses, including for spoilage and breakage, cash shortages, and fines or penalties incurred by the employer through the conduct of the employee."

60. As alleged herein, Plaintiff and the other Class members regularly worked hours for Defendants for which they were not paid, in violation of the NYLL.

61. Plaintiff and the other Class members also regularly spent more than 2 hours or 20 percent of their work days performing non-tipped work, but were still paid at the tip-credit minimum wage in violation of the NYLL.

62. Defendants also unlawfully withheld gratuities from Plaintiff and other Class members, in violation of the NYLL.

63. Defendants also regularly took improper deductions from the wages of Plaintiff and the other Class members, including deductions for returned or unpaid food, in violation of the NYLL.

64. Defendants also failed to provide Plaintiff and the other Class members with accurate wage notices and wage statements, as required under the NYLL.

65. Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to pay Plaintiff and the other Class members all of their tips and wages for all of the hours they worked when Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage notices and statements.

66. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular wages and tips.  Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

[this space intentionally left blank]

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. Designation of Plaintiff as representative of the FLSA Collective Plaintiffs;

b. Designation of this action as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class;

d. Compensatory damages in an amount to be determined at trial;

e. Statutory penalties and liquidated damages pursuant to the FLSA and NYLL;

f. Pre- and post-judgment interest; and

g. Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated: February 18, 2020
New York, New York

LEE LITIGATION GROUP, PLLC

By:  */s/ C.K. Lee*
C.K. Lee
Anne Seelig
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*